**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Blood Systems, Inc. et al., | ) | No. CV-11-02133-PHX-ROS |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Joseph Roesler, et al., | ) | |
| Defendants. | ) | |

Defendants Joseph and Pauline Roesler move for summary judgment and the law firm of Levenbaum & Cohen moves for an award of attorneys' fees and costs. As set forth below, the Roeslers are entitled to summary judgment and Levenbaum & Cohen is entitled to its attorneys' fees and costs.

## BACKGROUND

The parties disagree on the most basic of facts, making it difficult to set forth a clear and concise statement of the factual background. For present purposes, only the following facts are important. As of May 2009, Defendant Pauline Roesler worked for Blood Systems, Inc. ("Blood Systems"). In connection with her employment, Mrs. Roesler and her spouse, Defendant Joseph Roesler, participated in the "Blood System, Inc. Group Medical Plan" (the "Plan"). On May 27, 2009, Mr. Roesler, was seriously injured in a motorcycle crash. The Plan ended up paying approximately $50,000 for Mr. Roesler's medical care.

The Roeslers later retained the law firm of Levenbaum & Cohen[1] to pursue a personal injury claim against the other driver involved in the motorcycle crash.  The Roeslers settled their claim against the other driver for $100,000.  On November 10, 2009, the Roeslers received $66,573.17, reflecting their share of the $100,000 settlement after Levenbaum & Cohen retained its attorneys' fees and costs.

On October 28, 2011, Blood Systems and the Plan (collectively, "Plaintiffs") filed this suit, seeking to recover the approximately $50,000 the Plan paid out for Mr. Roesler's medical care.  Plaintiffs named as defendants the Roeslers as well as Levenbaum & Cohen. According to Plaintiffs, the Summary Plan Description ("SPD") for the Plan provides that if the Plan pays for medical care as a result of an injury caused by a third-party, the Plan has a right to subrogation and reimbursement from the payments or settlements received by the participant from the third-party.  (Doc. 100-1 at 105).  In other words, and as applied here, Plaintiffs believe the SPD means they are entitled to recover $50,000 from the settlement the Roeslers received from the other driver.  Plaintiffs apparently did not care whether that $50,000 came from the Roeslers or from Levenbaum & Cohen.

In September 2012, the Court granted summary judgment on Plaintiffs' claims against Levenbaum & Cohen.  In doing so, the Court concluded Plaintiffs' remedy, if any, lay against the Roeslers and not against the attorneys who handled the third-party tort claim. Levenbaum & Cohen seek the attorneys fees they incurred in obtaining that result.  And the Roeslers have now filed their own motion for summary judgment, presenting three arguments: 1) this suit is not timely; 2) the SPD is not an enforceable document under ERISA;[2] and 3) there is no basis for imposition of an "equitable lien by agreement" on the

---

[1] It appears a number of other individuals and entities were involved in representing the Roeslers in their tort suit against the other driver.  Those individuals and entities were related to Levenbaum & Cohen and were named as defendants.  For the sake of simplicity, the Court will refer to Levenbaum & Cohen as covering all related entities.

[2] The Employee Retirement Income Security Act of 1974.

1  relevant funds.  The first argument is convincing, meaning the Court need not reach the latter

2  two.

3  **ANALYSIS**

4  **I. Summary Judgment Standard**

5        Summary judgment is appropriate where "there is no genuine dispute as to any

6  material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).

7  Only *genuine* disputes will prevent summary judgment. *See Anderson v. Liberty Lobby, Inc.*,

8  477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not"

9  preclude entry of summary judgment.  *Id.*

10  **II. Plaintiffs' Claims Are Not Timely**

11        Plaintiffs' claims against the Roeslers depend on a number of basic propositions.

12  Those propositions include: the Plan is an ERISA-governed "employee welfare benefit

13  plan";[3] the Roeslers were participants in the Plan; the Plan allows for the recovery of funds

14  paid to participants in certain circumstances; and the Roeslers have refused to repay funds

15  otherwise owing to the Plan.   The Roeslers dispute the accuracy of some of these

16  propositions.  For purposes of their statute of limitations argument, however, the Roeslers

17  accept all the propositions and argue that Plaintiffs waited too long to file suit.  To analyze

18  the timeliness issue, the Court will also accept the underlying propositions.  Therefore, the

19  only question is whether Plaintiffs brought their claims soon enough.  They did not.

20        The parties agree that ERISA itself does not contain a statute of limitations applicable

21  to Plaintiffs' claims.  Therefore, the Court must borrow "the most analogous state statute of

22  limitations." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Insurance*, 222 F.3d

23  643, 646 (9th Cir. 2000).  When borrowing a state statute of limitations, the task is to apply

24  "the local time limitation *most analogous* to the case at hand." *Lampf v. Gilberston*, 501 U.S.

25  350, 355 (1991) (emphasis added).  In other words, the issue is not which state statute of

26  limitations is a "perfect" fit for the federal claim, but which statute of limitations is the

27  

28      [3] 29 U.S.C. § 1002(1) (providing definition for ERISA-governed plans).

1   closest fit. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 171 (1983).  And

2   when picking the closest fit, a federal court must "accept[ ] the state's interpretation of its

3   own statutes of limitations."  *Barajas v. Bermudez*, 43 F.3d 1251, 1258 (9th Cir. 1994)

4   (quotation and citation omitted).

5        Plaintiffs' claims against the Roeslers are, in effect, claims for benefits.  The Ninth

6   Circuit has already ruled that the "most analogous state statute of limitations" on claims for

7   benefits is the state statute of limitations for actions on a written contract.[4]  *Id.* at 647-48.  In

8   Arizona, that means there are two options.  First, there is Arizona's general six-year statute

9   of limitations for written contracts.  A.R.S. § 12-548.  Second, there is Arizona's one-year

10  statute of limitations for certain employment disputes.  A.R.S. § 12-541.  Choosing between

11  these two statutes appears to be a matter of first impression.[5]

12        Arizona's six-year limitations period applies to "[a] contract in writing that is

13

14        [4] A claim for benefits is usually brought by a plan participant against the plan under

15   ERISA section 502(a)(1)(B).  Those claims are routinely viewed as analogous to claims for
     breach of contract.  *See, e.g.*, *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir.

16   2006).  This suit, however, is primarily a claim brought by a plan against plan participants
     under ERISA section 502(a)(3).  Courts dealing with subrogation claims like this have

17   concluded they are also most analogous to claims for breach of contract.  *See, e.g.*, *Blue

18   Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1357 (11th Cir. 1998) ("[A]
     fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3)

19   is most closely analogous to a simple contract action brought under Alabama law.").
     Plaintiffs do not dispute the characterization of their claims as equivalent to claims for

20   benefits.  Therefore, the Court need not decide whether a distinction should be made between

21   claims under 502(a)(1)(B) and 502(a)(3).

22        [5] Numerous courts, not squarely presented with the issue, have applied Arizona's

23   general six-year statute of limitations to claims for benefits.  *See, e.g.*, *Lemberg v. Scottsdale
     Healthcare Corp. Health Plan*, 2011 WL 6049873, at *2 (D. Ariz. Dec. 6, 2011) (noting six-

24   year statute of limitations applies to benefit claims in Arizona).  Even the Ninth Circuit, in
     an unpublished opinion, summarily concluded Arizona's six-year limitations period applies

25   to such claims.  *Borota v. Ariz. Pipe Trades Pension Trust Fund*, 72 Fed. Appx. 723 (9th Cir.

26   2003).  But there is no indication in those decisions that the courts were aware of the multiple
     statutes of limitations issue.  Also, Plaintiffs' reliance on *Elgin v. Great-West Life Assur. Co.*,

27   786 P.2d 1027 (Ariz. Ct. App. 1989) is unconvincing because, at the time the case was

28   decided, the one-year limitations period had not been enacted.

executed in this state." A.R.S. § 12-548(A)(1). The one-year limitations period is more specific and applies only to actions "[f]or breach of an oral or written employment contract including contract actions based on employee handbooks or policy manuals that do not specify a time period in which to bring an action." A.R.S. § 12-541(3). The Arizona Supreme Court has not interpreted this latter statute. The Arizona Court of Appeals, however, has interpreted it as applying to almost all disputes between an employer and employee.

In *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, the court concluded the term "employment contract" in A.R.S. § 12-541(3) should be given its "ordinary meaning." 183 P.3d 544, 546 (Ariz. Ct. App. 2008). That meaning is: "a contract between an employer and employee in which the terms and conditions of employment are stated." *Id.* (quotation omitted). This definition is not limited to "agreements affecting a term of employment or altering or limiting the at-will presumption." *Id.* at 547 (quotation omitted). Instead, it includes "all contracts defining specific responsibilities of the employer to the employee." *Id.* at 548. That is, any agreement related to "the nature, conditions, or duration" of employment is subject to A.R.S. § 12-541(3). *Id.* at 549. Using this broad construction, the *Redhair* court concluded a contract between an employee and employer for payment of a bonus was an "employment contract" subject to the one-year limitations period. *Id.*

For purposes of the present case, the question is whether an ERISA plan should be viewed as an "employment contract" as that term was defined by the *Redhair* court. To begin, there can be no dispute that the agreement between Blood Systems and the Roeslers regarding healthcare benefits was a contract. *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 708 (9th Cir. 2012) ("An ERISA plan is a contract . . . ."). It is also indisputable that the parties' contract defined "specific responsibilities of [Blood Systems] to [the Roeslers]." *Redhair*, 183 P.3d at 548. Under the parties' contract, Blood Systems agreed to provide Pauline Roesler additional compensation in the form of paying for medical care in return for Pauline Roesler's continued employment. Accordingly, using the interpretation of "employment contract" adopted in *Redhair*, claims regarding benefits under an ERISA plan

qualifies as claims under an "employment contract."

Equating ERISA disputes as subject to special limitations periods applicable to employment disputes is in line with decisions from two courts of appeals. In *Adamson v. Armco, Inc.*, 44 F.3d 650 (8th Cir. 1995), the Eighth Circuit addressed which Minnesota statute of limitations should apply to a claim for ERISA benefits. The choice was between Minnesota's general six-year limitations period for written contracts or its "two-year statute of limitations for wage claims." *Id.* at 652. Looking to Minnesota's interpretation of its own statutes, the Eighth Circuit found that Minnesota courts applied the two-year period to "all damages arising out of the employment relationship," including "a claim for salary increases and adjustment of all fringe benefits." *Id.* (quotations and citations omitted). Based on that reading of the Minnesota statute, the Eighth Circuit concluded the two-year limitations period was "the most analogous Minnesota statute of limitations" for the plaintiffs' ERISA claim. *Id.*

The Third Circuit reached a similar conclusion in *Syed v. Hercules Inc.*, 214 F.3d 155 (3d Cir. 2000). As in *Adamson*, the question was the applicable limitations period for an ERISA claim for benefits. Accepting that a claim for benefits should be analogized to a contract dispute, the court noted that "Delaware, in essence, has two statute of limitations for contract disputes." *Id.* The court, therefore, had to determine which of the two statutes was "more appropriate." *Id.* at 159. The first statute provided a three-year period "for general actions on a promise." *Id.* The second statute imposed a one-year period on "a claim of wages, salary, or overtime for work, labor or personal services performed, . . . *or for any other benefits arising from such work, labor or personal services performed*." *Id.* Looking to a pre-ERISA case from the Delaware Supreme Court, the court noted that the one-year period had been applied to a claim under a "disability wage plan." *Id.* And looking to a pre-ERISA case from the District of Delaware, the court noted the one-year period was meant to apply to "all claims arising out of the employer-employee relationship." *Id.* (quotation and citation omitted). Based on these earlier cases, the Third Circuit concluded Delaware's one-year limitations period applicable to employee "benefits" was the most analogous state

1  limitations period for a claim for benefits under ERISA.

2      Based on these decisions from the Eighth and Third Circuits, as well as Arizona's

3  interpretation of its own statute of limitations,[6] the one-year period applicable to

4  "employment contract" disputes is the most analogous state statute of limitations for

5  Plaintiffs' claims against the Roeslers.  Having reached this conclusion, the final step is to

6  ensure that the particular limitations period selected does "not impede effectuation of federal

7  policy."  *Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993).  Plaintiffs

8  do not present any argument that the one-year period would impede federal interests.  And

9  the *Syed* court described a one-year limitations period as "short," but not "inconsistent with

10 the policy of ERISA."  214 F.3d at 161.  The Court agrees with the *Syed* court that a one-year

11 limitations period is consistent with federal policy, but some explanation why that is the case

12 is appropriate.

13     Switching from the long-accepted limitations period of six-years to the one-year

14 limitations period might be viewed as harsh when applied to the usual case of an individual

15 seeking to recover ERISA benefits.  But the possible harshness of a one-year limitations

16 period is significantly mitigated by two underlying aspects of the law applicable to most

17 ERISA claims for benefits.  First, the possibility of contractual limitations periods.  And

18 second, the special accrual rule for ERISA claims.

19     ERISA plans and their participants are usually allowed to contractually agree on a

20 particular limitations period.  *See, e.g.*, *Spinedex Physical Therapy, U.S.A., Inc. v. United*

21 *Healthcare of Ariz.*, 2012 WL 8147128 (D. Ariz. Oct. 24, 2012) (applying two-year

22 limitations period to claim in Arizona); *Rice v. Jefferson Pilot Financial Ins. Co.*, 578 F.3d

23 450, 454 (6th Cir. 2009) (accepting three-year limitations period in ERISA plan).  Under this

24 rule, courts have approved limitations periods shorter than statutory limits.  *See, e.g.*,

25 *Davidson v. Wal-Mart Associates Health & Welfare Plan*, 305 F. Supp. 2d 1059 (S.D. Iowa

26

27     [6] Under Arizona law, when two limitations period might apply, the more specific
   limitations period applies.  *W.J. Kroeger Co. v. Travelers Indem. Co.*, 541 P.2d 385, 387

28 (Ariz. 1975).

2004).  But there is no obvious impediment to plans and participants agreeing to *longer* limitations periods than those provided by statute.  *See, e.g.*, *ABF Capital Corp. v. Berglass*, 30 Cal. Rptr. 3d 588, 594 (Ca. Ct. App. 2005) ("California allows contracting parties to both shorten and extend limitation periods . . . .").  So if Plaintiffs and the Roeslers had contractually agreed to a six-year limitations period in the Plan itself, the Court may have honored that choice.  In other words, if Plaintiffs believe a one-year limitations period is too short, they likely can contract around it.  *Cf. Wang Laboratories, Inc. v. Kagan*, 990 F.2d 1126 (9th Cir. 1993) (enforcing choice of law provision in ERISA plan resulting in longer statute of limitations).

The second reason the Court believes the one-year limitations period is acceptable is the special accrual rule applicable to most claims for benefits.  A claim for benefits usually requires administrative exhaustion.  And a claim formally accrues only when the "benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Withrow v. Halsey*, 655 F.3d 1032, 1036 (9th Cir. 2011) (citation and quotation omitted).  Therefore, individuals who file suits seeking benefits will have already gathered their evidence, presented their arguments, and gone through an entire administrative process.  Requiring an individual file her suit within one year of that administrative process ending is reasonable.[7]

In summary, Plaintiffs concede their claims accrued on November 10, 2009.  The most analogous state statute of limitations to Plaintiffs' claim is Arizona's limitations period on "employment contract" disputes.  And application of that period is consistent with federal policy.  Therefore, Plaintiffs' claims asserted close to two years after they accrued are not timely and the Roeslers' are entitled to summary judgment.

---

[7] The question of when a subrogation claim accrues is, of course, different.  Such claims likely accrue when the third-party claims are settled.  *See, e.g.*, *Provident Life and Accident Insurance Co. v. Williams*, 858 F. Supp. 907 (W.D. Ark. 1994) (subrogation claim accrues when third-party claims were settled).  A one-year limitations period after settlement is ample time for an ERISA plans to bring claims against its participant.

### III. Levenbaum & Cohen Are Entitled To Attorneys' Fees

Levenbaum & Cohen obtained summary judgment on Plaintiffs' claims and now seek to recover the attorneys' fees it incurred in doing so. ERISA authorizes an award of attorneys fees to a party who achieves "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010). Once a party achieves some success, the court should not "favor one side or the other" when deciding whether to award attorneys' fees. *Estate of Shockley v. Alyeska Pipeline Service Co.*, 130 F.3d 403, 408 (9th Cir. 1997).

There is no dispute that Levenbaum & Cohen were sufficiently successful to support an award of attorneys' fees. Therefore, the Court must analyze the following five factors to determine whether an award of fees is appropriate:

1. the degree of Plaintiffs' culpability or bad faith,

2. Plaintiffs' ability to satisfy an award of fees,

3. whether an award of fees would deter others from acting in similar circumstances,

4. whether Levenbaum & Cohen sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and

5. the relative merits of the parties' positions.

*Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1235 (9th Cir. 2000) (quoting *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)). Each factor should be considered and "no single . . . factor is necessarily decisive." *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1122 (9th Cir. 2010). Therefore, the Court addresses each factor below.

### 1. Degree of Culpability or Bad Faith

The first factor is Plaintiffs' degree of culpability or bad faith in bringing their claims against Levenbaum & Cohen. *Hummell*, 634 F.2d at 453. As recounted in the motion seeking fees, Levenbaum & Cohen made repeated efforts to explain to Plaintiffs that the settlement funds had been disbursed to the Roeslers long before this case began. Levenbaum

& Cohen also explained that the funds it had retained from the settlement had already been internally disbursed. Thus, at the very start of this case it was not clear what "specific fund" Plaintiffs believed Levenbaum & Cohen had in its possession that could be the subject of suit. But even more importantly, the funds disbursed to the Roeslers were sufficient to cover the full amount Plaintiffs were seeking in this case. Therefore, there was no need for Plaintiffs to involve Levenbaum & Cohen as an additional defendant. Plaintiffs' decision to sue Levenbaum & Cohen indicates some degree of culpability and weighs in favor of awarding fees.[8]

### 2. Ability to Pay Fee

The parties agree that the second factor, Plaintiffs' ability to satisfy an award of fees, is met in that Plaintiffs have such an ability. *Hummell*, 634 F.2d at 453.

### 3. Deter Others

The third factor is "whether an award of fees would deter others from acting in similar circumstances." *Hummell*, 634 F.2d at 453. Plaintiffs admit that awarding fees "may deter future groundless claims" but they claim "it is equally possible that it will tend to deter meritorious ones." (Doc. 116 at 5). The Court does not agree with the latter portion. Plaintiffs decided to sue Levenbaum & Cohen on very tenuous claims when they had clear claims against the Roeslers. Moreover, Plaintiffs never had a firm factual basis for asserting Levenbaum & Cohen remained in possession of a specific fund. Accordingly, deterring claims such as Plaintiffs' would not chill meritorious claims. Therefore, this factor supports awarding fees.

---

[8] Plaintiffs' conduct, however, does not qualify under the Ninth Circuit's test for bad faith. Under that test, "to avoid a finding of bad faith . . . plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim." *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir. 2000). At the time this case was filed, the case the Court relied on in granting summary judgment had not yet been decided. It is possible, therefore, that Plaintiffs reasonably believed they had a viable claim against Levenbaum & Cohen.

### 4.  Benefit Others

The fourth factor is whether Plaintiffs "sought to benefit all participants and beneficiaries of an ERISA plan." *Hummell*, 634 F.2d at 453.  Levenbaum & Cohen argue this factor is not applicable.  Plaintiffs counter that refusing to award fees against Plaintiffs would benefit all participants in the Plan by preserving the Plan's "financial viability." (Doc. 116 at 6).  The Court agrees that preserving the financial viability of health plans benefits all participants.  But the economics of enforcing subrogation provisions are much more complicated than Plaintiffs admit. *See, e.g.*, Scott M. Aronson, *ERISA's Equitable Illusion: The Unjust Justice of Section 502(A)(3)*, Employee Rights and Employment Policy Journal (2005) ("Subrogation recoveries are used to increase executive compensation or shareholder dividends, not to reduce premiums.").  And health plans should not be immune from attorneys' fees whenever they file subrogation actions.  Overall, the present circumstances render the fourth factor neutral.

### 5. Relative Merits

The final factor is "the relative merits of the parties' positions." *Hummell*, 634 F.2d at 453.  Plaintiffs' claims against Levenbaum & Cohen were not strong.  This factor favors awarding fees.

On balance, the five factors support awarding Levenbaum & Cohen its attorneys fees.  Plaintiffs did not object to the hourly rate or number of hours claimed by Levenbaum & Cohen.  And having reviewed Levenbaum & Cohen's submissions, the hourly rates are appropriate and the number of hours spent on this case were reasonable.  Therefore, Levenbaum & Cohen will be awarded $30,700 in attorneys' fees and non-taxable costs of $600.42.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (**Doc. 99**) is **GRANTED**.

**IT IS FURTHER ORDERED** the Motion for Attorneys' Fees (**Doc. 90**) is **GRANTED**.

1        **IT IS FURTHER ORDERED** no later than October 4, 2013 the parties shall file a

2   joint proposed final judgment.

3        DATED this 24th day of September, 2013.

4

5

6

7        _____

8                        Roslyn O. Silver
                  Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28